## LA FEBER v. UNITED STATES.
### BENNIE v. SAME.
### DEVERGER v. SAME.
#### Nos. 9174–9176.

Circuit Court of Appeals, Eighth Circuit.
May 5, 1932.

Rehearing Denied June 24, 1932.

E. W. McManus, of Keokuk, Iowa, for appellants.

Ross R. Mowry, U. S. Atty., of Newton, Iowa (Frank F. Wilson, Asst. U. S. Atty., of Mt. Ayr, Iowa, and Ray C. Fountain, Asst. U. S. Atty., of Des Moines, Iowa, on the brief), for the United States.

Before STONE and BOOTH, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

Appellants Sadie La Feber, Rose Bennie, and Charles Deverger were, together with Raymond Beshears, jointly indicted at the November, 1930, term of the United States District Court for the Southern District of Iowa. The indictment is in five counts; counts 1 and 3 each charges violation of sec-

tion 399, title 18, USCA, known as the Mann Act; counts 2 and 4 each charges a violation of section 398 of the same act; count 5 charges a conspiracy to commit the several offenses charged in the first four counts of the indictment in violation of section 88, title 18, USCA.

Raymond Beshears was never apprehended by reason of the fact that he could not be found, and the three above-named appellants were tried together upon the charges contained in the indictment, and each of them was found guilty on all five counts. Sadie La Feber was sentenced to imprisonment in the penitentiary for a term of five years on each of the first four counts of the indictment, and for a term of two years and fined $2,000 on count 5; said prison terms running concurrently. Rose Bennie and Charles Deverger were each sentenced to imprisonment in the penitentiary for a term of three and one-half years on each of the first four counts of the indictment, and for a term of two years on count 5; said prison terms running concurrently. The cases come to this court by appeals from this judgment and sentence.

There is evidence in the record tending to prove the following: On July 14, 1930, Raymond Beshears, Charles Deverger, and Glenna Enochs, a married woman twenty years of age who was separated from her husband, drove from Hannibal, Mo., in Beshears' automobile, to Quincy, Ill., where they went to the home of Elizabeth Morrall, a married sister of Charles Deverger. Mrs. Morrall told them that she was having trouble with her husband, and while her brother, Deverger, and Mrs. Enochs were at her home she decided to take her personal belongings and leave with them. The four persons then drove to Monmouth, Ill., where they went to see the mother of Elizabeth Morrall and Charles Deverger, and, after spending an hour or two at Monmouth, they drove back to Quincy, and Deverger and the two women spent the night at a hotel in that city. The next morning, both women, being out of funds, decided to go to Galesburg, Ill., in search of employment, but they met Raymond Beshears and he told them that they might get a job with Sadie La Feber in a house of ill fame at Keokuk, Iowa. Later in the day Deverger and Beshears had a telephone conversation with Rose Bennie, a niece of Sadie La Feber, who was at the La Feber home at Keokuk, and the two women, Morrall and Enochs, were informed that Sadie La Feber would come to Quincy that afternoon and would meet them at the park

about 1:30 or 2 o'clock. Sadie La Feber, Rose Bennie, and Red Reardon drove from Keokuk, Iowa, to Quincy, Ill., and met Elizabeth Morrall and Glenna Enochs, Raymond Beshears, and Charles Deverger, at or near the park at Quincy, at about 1:30 or 2 o'clock in the afternoon. Mrs. Morrall and Mrs. Enochs and Deverger got into the La Feber automobile and they all drove to a garage at Quincy to have the automobile looked over. After leaving the garage they all went to the home of Milton Schornhorst, where they stayed and drank beer until about 6 o'clock in the afternoon, when the train left for Keokuk, Iowa. There was some testimony to the effect that Rose Bennie had several conversations with Elizabeth Morrall during the afternoon about Sadie La Feber's place in Keokuk, and about Elizabeth Morrall and Glenna Enochs going there. During these conversations Rose Bennie told Mrs. Morrall that she and the Enochs woman could make plenty of money at Sadie La Feber's, and gave her four dollars and the key to the back door of the La Feber house in Keokuk. The money given to her was to pay the railroad fare of the two women from Quincy, Ill., to Keokuk, Iowa, and it was further arranged that upon their arrival at Keokuk the two women were to take a Yellow Cab to the La Feber house and have the taxi fare charged to Sadie La Feber. At about 6 o'clock in the afternoon, Mrs. Morrall and Mrs. Enochs were taken from the Schornhorst place to the depot in Sadie La Feber's automobile. They thereafter took the train to Keokuk, arriving there at about 7:45. They then took a Yellow Cab and drove to Sadie La Feber's house, and had the taxi fare charged to Sadie La Feber. They gained entrance to the house through the back door by means of the key given to them by Rose Bennie. At about 11 o'clock p. m. Sadie La Feber arrived from Quincy, bringing with her the grips and personal belongings of Elizabeth Morrall and Glenna Enochs. She was intoxicated when she arrived at the house and told the two women to go upstairs and go to bed, and that she would assign them their rooms the next morning. Elizabeth Morrall and Glenna Enochs stayed at Sadie La Feber's place for several weeks, during which time they were both engaged in prostitution. They were both instructed by Sadie La Feber as to how to take care of themselves, and required to turn over one-half of the money they received to Sadie La Feber.

There are numerous assignments of error, all of which have been carefully considered by the court, but as a discussion of each of

590

them would serve no real purpose, we deem it necessary to consider only the more important of said assignments.

On November 13, 1930, counsel for Sadie La Feber presented a motion for a continuance over the term upon the ground that said Sadie La Feber was and for some time prior thereto had been confined in a hospital at Keokuk by reason of illness and was unable to attend court or confer with her attorneys. The report of two physicians appointed by the court to examine said Sadie La Feber was to the effect that in their opinion she would be able to appear in court and proceed with the trial of said case in a week or ten days, whereupon the court overruled the motion for a continuance over the term and fixed the 20th day of November, 1930, at 10 o'clock a. m., as the time for said trial. No further showing as to the defendant's condition was made, neither was any further application for continuance presented, but at the appointed time Sadie La Feber was present in court and during the trial testified as a witness in her own behalf. A motion for a continuance is addressed to the wise discretion of the trial court, and, in the absence of abuse of discretion, the action of the court thereon will not be disturbed. While the motion for continuance over the term was denied, the trial was, in effect, postponed for one week on account of the illness of the defendant, and if at the time fixed for the trial her condition was such as would warrant the court in granting a further postponement, a further showing and application should have been made. There is no merit in appellants' claim of error in this regard.

It is contended by appellants that the trial court erred in overruling their several motions for severance and separate trials. Such a motion, like a motion for continuance, goes largely to the discretion of the trial court. The case was free from any complication which would render separate trial of appellants necessary, and, in our opinion, the trial court was well within a sound discretion in denying the motions. During the course of the trial and in the charge to the jury, the court made it plain that the evidence was to be considered separately as to each of the three persons on trial, and that the jury must be convinced of the guilt of each of them before conviction. There was no error in denying the motions for severance and separate trial.

Henry Deverger, the father of Elizabeth Morrall and Charles Deverger, as a witness for the defense, testified to the bad reputation of his daughter as to morals and veracity. At the conclusion of his testimony, the trial judge addressed him as follows: "Get off the stand, please. Out of my sight." It is urged by appellants that this remark indicated an attitude of hostility on the part of the court towards the witness which tended to prejudice the jury against appellants. The testimony of the witness was confined entirely to a collateral matter, and the jury were repeatedly instructed by the court that they were the sole judges of the credibility of the several witnesses. The remark of the court complained of may not have been judicial, but under the circumstances it was not at all unnatural, and in our opinion there was nothing about it that could have in any way influenced the jury or caused them to alter their opinion as to the witness. If there was error in the court's remark, it was not prejudicial.

In his argument to the jury, the United States District Attorney made the following remark: "They are simply trying to throw up a smoke screen in order that this woman, who has been pandering, may go." It is urged that this remark was entirely unsupported by the evidence, and constituted prejudicial error. It is true that remarks of an inflammatory character or entirely gratuitous which reflect upon the character or credibility of a defendant in a criminal proceeding should not be indulged in by counsel. It is equally true, however, that statements which are supported by evidence, and the inferences which naturally and reasonably flow therefrom, are not usually regarded as a sufficient basis to sustain a claim of error. There is an abundance of evidence in the record which, if believed, would justify the inference or conclusion that Sadie La Feber was engaged in pandering, and, while the statement of the District Attorney is not to be commended, it was made in the heat of his closing argument, and under the circumstances was not calculated to arouse prejudices in the minds of the jury inconsistent with the administration of justice.

"To entitle the accused to a reversal when objection is made and the language not withdrawn it must appear that the matter objected to was plainly unwarranted and so improper as to be clearly injurious to the accused." Chadwick v. United States (C. C. A.) 141 F. 225, 245. See, also, Portman v. United States (C. C. A.) 34 F.(2d) 406; Billingsley v. United States (C. C. A.) 274 F. 86.

We find no reversible error in the argument of counsel for the plaintiff.

During the trial the witnesses, Elizabeth Morrall and Glenna Enochs, were, over the separate objection of appellants La Feber and Bennie, permitted to testify as to certain conversations had between the witness and Charles Deverger and Beshears, in the absence of the objecting defendant. The same witnesses also testified over objection on the part of Sadie La Feber and Charles Deverger as to conversations between the two witnesses and Rose Bennie in the absence of the objecting defendant. It is urged by the several appellants that the evidence was clearly hearsay as to each of the appellants who was not present when the particular conversation was had, and that the court erred in admitting the testimony over the several objections. While it is undoubtedly true that testimony as to a conversation had in the absence of either of appellants would be hearsay as to those not present, it appears that one or more of appellants were present and took part in each of the conversations testified to. The evidence was certainly admissible against the parties who took part in the conversation. The jury was properly instructed as to the purpose and scope of this class of evidence, and was given to understand that testimony as to the conversations should be considered as applying to and binding upon only those who were present during such conversations. We find no error in the admission of this evidence.

A motion made on behalf of each appellant for a directed verdict was denied by the trial court, and this ruling is assigned as error. If there is substantial evidence tending to prove the charges set forth in the indictment, there was no error in submitting the case to the jury. The record discloses that there was evidence to the effect that Deverger and Beshears brought Glenna Enochs from Hannibal, Mo., to Quincy, Ill.; that they went to the Morrall home; that Mrs. Morrall told them she was having trouble with her husband; that she was thinking of leaving him; that the two women went to Monmouth, Ill.; that they were out of money and planned to go to Galesburg, Ill., to look for employment; that Deverger and Beshears told them they could get a place in a house of ill fame in Keokuk, Iowa; that pursuant to a telephone conversation Sadie La Feber and Rose Bennie met the two women and Deverger and Beshears at or near the park in Quincy, Ill.; that they all went to the Schornhorst place and spent the afternoon drinking beer; that there was talk between the women of going to the La Feber place; that they were provided with the money to pay the railroad fare and the key to the La Feber house by Rose Bennie; that they were taken to the depot in Quincy in Sadie La Feber's automobile; that pursuant to instructions they went from the depot in Keokuk to Sadie La Feber's home in a Yellow Cab, the fare being charged to and paid by Sadie La Feber; that Sadie La Feber and Rose Bennie brought the grips and personal belongings of Elizabeth Morrall and Glenna Enochs from Quincy, Ill., to Keokuk, Iowa, in Sadie La Feber's automobile; that the two women lived at the La Feber house in Keokuk for a number of weeks, where they indulged in prostitution, paying one-half of the money received to Sadie La Feber. In view of this testimony, all of which tends to establish the truth of the charges contained in the indictment, the court's action in overruling the motions for directed verdict was free from error.

Complaint is made as to the court's instructions to the jury, and also the refusal on the part of the court to give certain requested instructions. We have considered all of these several assignments, and find no merit in any of them. Our conclusion is that the court's charge fully and correctly stated the law as applied to the evidence in the case, and in substance and effect sufficiently covered all matters properly requested by appellants. We find no prejudicial error in the court's instructions.

The judgment of the trial court is therefore affirmed.