**SALERNO v. UNITED STATES.***

**CANIGLIA v. SAME.**

**McDONALD v. SAME.**

**Nos. 9517–9519.**

Circuit Court of Appeals, Eighth Circuit.

Oct. 26, 1932.

William N. Jamieson, of Omaha, Neb., for appellants.

Edson Smith, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., and Lawrence I. Shaw, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

*Rehearing denied December 2, 1932.

SANBORN, Circuit Judge.

These appellants, together with Jeff Stewart, were charged with six separate offenses growing out of the ownership and operation of a distillery in a barn located in Douglas county, Neb.

In the court below the appellants entered the usual demurrers to the indictment, and now urge that the overruling of their demurrers constituted error. The basis for this contention is that the description of the land upon which the barn containing the distillery was situated was vague and indefinite. They say: "Undoubtedly there were other barns upon the property in question and the indictments should at least allege the quarter section upon which the barn was situated."

The various counts of the indictment described the barn as being on "the sixteen (16) acres, more or less, known as the balance of ninety-six (96) acres in Section 5, Township 15, Range 12, in the County of Douglas, Nebraska." Each count charges the commission of an offense by the defendants Salerno, Caniglia, Stewart, and McDonald jointly on a date specified. In the first count, they are charged with having made 14,400 gallons of mash fit for the production of alcoholic spirits; in the second count, with having fermented the same number of gallons of mash; in the third count, with having separated 250 gallons of alcoholic spirits; in the fourth count, with having carried on the business of distillers of alcoholic spirits, with intent to defraud the United States of the tax on the 250 gallons of spirits distilled by them; in the fifth count, with having used two stills of approximately 150 gallons capacity each, for the purpose of distilling alcoholic spirits from a fermented mash in the barn. The sixth count charges them with an unlawful conspiracy to manufacture and transport from the barn intoxicating liquor, and charges that, in furtherance of the conspiracy, they committed the following overt acts: On or about March 23, 1931, Salerno talked to John Swanson about renting the described premises, and, on or about March 25, 1931, Salerno directed one of the conspirators to sign a lease for the property; on or about March 25, 1931, Salerno paid John Swanson, agent for the owner of the property, $75 on account of rent; on or about April 28, 1931, Salerno, Caniglia, and McDonald transported whisky from these premises to a point near Ninetieth and Blondo streets; on or about April 29, 1931, Jeff Stewart was engaged in distilling whisky with two 150-gallon stills on the premises.

In Davis v. United States, 24 F.(2d) 814 (C. C. A. 8th) the same contention was made relative to an indictment as is made here. Judge Booth, on page 816 of 24 F.(2d), said:

"The 'identifying earmarks of the occasion' thus required to be stated may relate to time, place, persons present, or other circumstances. In Rutledge v. United States (C. C. A.) 19 F.(2d) 896, this court took occasion to comment favorably on an information charging unlawful sales of intoxicating liquor. The information stated the dates, the places, the amount sold, the kind of liquor, and the names of the persons to whom sold.

"Particular specification as to place would seem to be one of the most satisfactory earmarks, and one almost always within the knowledge of the pleader; but no particular earmark is indispensable. Thus, in Gaughan v. United States, supra [19 F.(2d) 897], this court held that the naming of the particular kind of a vehicle in which the alleged illegal transportation of intoxicating liquor was made was a sufficient earmark. The same holding was made in Corcoran v. United States, supra [(C. C. A.) 19 F.(2d) 901]. It is the presence of some identifying earmark, and not of any particular one, that is important.

"With these rulings in mind, let us examine the indictment in the case at bar. In the first place, the character of the offenses charged is somewhat unusual, and in itself tends to identify the transaction. The possession of a still, the operation of the same, carrying on the business of distillers, the possession of mash, constitute a transaction not of an ordinary nature. But this is not all. The still is particularly described in the indictment as to its construction, and as being set up, and as capable of operation. Further, the offenses are charged as being committed in association with three other persons, and these three persons are specifically named. When an offense is charged to have been committed in association with others, who are named, each additional associate named gives additional definiteness to the charge, and there comes a point where the mere number of associates so named is a sufficient identifying earmark of the offense. We think that point was reached in the case at bar."

The "identifying earmarks" contained in this indictment, in addition to the time when the offenses were committed and the section, township, range, county, and state where they were committed, are as follows: That the offenses were committed in a barn on a

16-acre tract; that a specified amount of mash was involved; that a specified amount of liquor was separated from the mash; that two 150-gallon stills were used; that those associated in committing the offenses were Salerno, Caniglia, McDonald, and Stewart; that they had conspired together to operate the distillery, and, in furtherance of the conspiracy, had committed the overt acts hereinbefore referred to. Under the circumstances, we think that the essential facts were sufficiently stated and earmarked to enable the defendants to prepare their defense, and to constitute the judgment in this case a complete bar to a second prosecution for any of the same offenses.

■ If the defendants were in doubt as to the property intended to be described, or feared that they might be taken by surprise by the testimony on the trial, they should have demanded a bill of particulars. Rinker v. United States (C. C. A.) 151 F. 755; Cochran v. United States (C. C. A.) 41 F.(2d) 193; Chew v. United States (C. C. A.) 9 F. (2d) 348; Rimmerman v. United States (C. C. A.) 186 F. 307; Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606.

The Tenth Circuit has recently held sufficient an indictment charging possession of liquor at "a point in the seven hundred block on North Third street, in the city of Muskogee, Muskogee county, state of Oklahoma." Tiller v. United States (C. C. A.) 34 F.(2d) 398, 399. It is fair to assume that there are more points in the seven hundred block on North Third street in the city of Muskogee than barns on section 5, township 15, range 12, in Douglas county, Neb. The record shows that the defendants were in no way misled as to what barn was referred to in the indictment, and the lease, which the evidence shows was negotiated by Scrapo and Salerno, contains the same description as the indictment.

The appellants entered pleas of not guilty. Jeff Stewart, the other defendant, entered a plea of guilty, and was the principal witness for the government upon the trial.

There was no dispute in the evidence as to the existence of a distillery in the barn in question. At the time of the raid by the government officers on April 29, 1931, the distillery was in full operation, with Jeff Stewart in charge. The appellants were not present. In order to connect them with the operation of the distillery, the government produced evidence to show that Salerno, Caniglia, and a man by the name of Scrapo were associated together in the leasing of the premises; that Salerno and McDonald had employed Jeff Stewart as a "cooker"; and that Salerno and McDonald and Caniglia had all assisted in removing moonshine whisky from the distillery. The defendant Salerno denied that he had had anything whatever to do with the distillery or was interested in it in any way, although he admitted that he had on one occasion purchased liquor from Caniglia. McDonald denied any connection, but says that on one occasion he bought whisky from Caniglia on the farm. Caniglia testified that he and Scrapo were the only ones who were interested in the distillery; that they had employed Jeff Stewart; that they sold a load of liquor to McDonald the first night that they ran the still; and that one load was delivered from the distillery to Salerno. This, in a very brief and general way, is an outline of the evidence.

The appellants were convicted. The court sentenced each appellant generally to a term in a county jail and imposed a fine. They have appealed from the judgments.

■ The appellants claim that the court erred in receiving, over objection, certain testimony of the witness Jeff Stewart. He had stated that he had been employed by Salerno and McDonald to operate the distillery, and was asked what compensation he was to receive. At that point the following question was asked and the following answer given: "Q. What I want to get at is just what conversation there was, what the defendant told you about payment there? A. Well, I asked him what he figured he ought to pay me out of that, so there wasn't no exact amount named right then, but a little later on, why, I heard that this other fellow, that they had promised him a hundred dollars, so I figured I would get about a hundred and twenty-five or thirty."

Appellants' counsel moved to strike the answer as hearsay. The court said: "Well, it is not directly binding upon the defendant, that's true, but yet it is one of the incidents of the transaction. I think the testimony may stand."

What the witness heard about the "other fellow" was hearsay, but the answer could have in no way prejudiced the appellants. So long as the witness was employed to operate the distillery, it was a matter of no consequence what they agreed to pay him, or whether he was to receive anything for his work. It was error without prejudice.

During the examination of this same wit-

ness, reference was made to the "hijacking" of a load of liquor, and the following took place: "Q. I don't know just what you mean by wondering why they turned in about the truck being hijacked. What other conversation was there, if any, about the hijacking?"

This was objected to as leading and suggestive, and the objection was overruled. "A. Well, they was supposed to have been robbed they said—supposed to have been held up."

A motion was made to strike this answer, and was overruled. "A. (continued). Well, I picked up the paper one evening and I seen it where they had been robbed—"

Appellants' counsel objected to this as incompetent, irrelevant, and immaterial, and hearsay evidence. The objection was overruled. The appellants preserved exceptions to each of these rulings.

The witness Jeff Stewart had previously testified that the appellants had come to the distillery and loaded up a truck on several occasions, and on one particular occasion with 196 gallons of moonshine. The government intended to show, and later did show by circumstantial evidence, that this load of liquor had been taken from them by "hijackers"; that they had had a man arrested by the state authorities on that account—all this as bearing upon their participation in the business of operating a still.

The first question objected to merely called for conversation between the witness and a defendant relative to the asserted "hijacking" of the truck. It was neither leading nor suggestive, which were the only grounds of the objection. The answer was unobjectionable, because it referred to a statement made by the appellants.

The answer relative to what the witness saw in the paper was not competent, but no motion was made to strike it, and, for that reason, no error was committed by the court in failing to sustain the objection interposed after the answer had been given.

The next specification of error urged relates to the government's testimony with respect to the giving of a gallon of whisky to W. G. Nichols, the proprietor of the Checker Inn. It appears that the inn was in close proximity to the distillery, and that Mr. Nichols' relations with the defendants, or some of them, were friendly. It also appears, from the government's evidence, that Salerno was present when the gift was made. The testimony had some bearing upon the question as to whether Salerno was associated

with the other defendants in the operation of this distillery. The witness Stewart had testified that there had been a gallon of liquor set aside for Mr. Nichols. Under all the circumstances, it was not error to receive the testimony that Mr. Nichols had been given a gallon of liquor in the presence of Salerno.

The next specification of error urged relates to the testimony of Jack Butler. It appears that McDonald had filed a complaint in the state court against him, growing out of the claimed "hijacking" of the load of liquor. Butler was permitted to testify, over the objection of the defendants, that McDonald had filed the complaint; that he (Butler) was arrested and gave bond. He was then asked what disposition was made of his case. This was objected to as immaterial. The objection was overruled, and an exception preserved. The witness then stated that he was found not guilty; that the complaining witnesses in the case were McDonald and Salerno; that the charge was robbery of McDonald and Salerno on the 28th day of April, 1931, the night that the government contended "hijackers" had taken the load of liquor. The purpose of the testimony was to indicate that Salerno and McDonald were associated in the unlawful enterprises charged in the indictment. We think that most of the testimony elicited by the question was material, and that the court did not err in receiving it. The question, in the form in which it was put, may not have called for material testimony, but, taking the question and the answer together, the testimony elicited did bear upon the question of guilt.

The next specification of error argued relates to the testimony of the appellant Caniglia on cross-examination. He had testified to the sale of one load of liquor from the distillery to Salerno, and to the sale of another load to McDonald. He also said, on being cross-examined: "I believe I gave some liquor to Walter Nichols once. I believe it was the night that Mr. Salerno was out there."

He was then asked: "Q. What kind of liquor was that? A. Well, there was on [one] gallon—"

At this point, counsel objected on the ground that it was improper cross-examination, not having been gone into on direct examination. The court said: "Well it is closely related to matters that were gone into—I overrule that objection."

The witness then continued: "I knew it was just one gallon. I do not know what kind of liquor was in there because Jeff Stew-

are jugged it up and put it into the container. It was ready for me when I left. I gave it to Nichols. Jeff Stewart, as I understood it, promised it to him, and he told me to drop it off at the Checker Inn."

This specification of error and those which follow relate to the cross-examination of the defendants.

The rule governing such cross-examination is stated by the Supreme Court of the United States in the case of Raffel v. United States, 271 U. S. 494, 496, 46 S. Ct. 566, 567, 70 L. Ed. 1054, as follows:

"The immunity from giving testimony is one which the defendant may waive by offering himself as a witness. Reagan v. United States, 157 U. S. 301, 15 S. Ct. 610, 39 L. Ed. 709; Fitzpatrick v. United States, 178 U. S. 304, 20 S. Ct. 944, 44 L. Ed. 1078; Powers v. United States, 223 U. S. 303, 32 S. Ct. 281, 56 L. Ed. 448; Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Gordon v. United States, 165 C. C. A. 463, 254 F. 53; Austin v. United States (C. C. A.) 4 F.(2d) 774. When he takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. Reagan v. United States, supra, 305 ([of 157 U. S.], 15 S. Ct. 610); Fitzpatrick v. United States, supra; Tucker v. United States (C. C. A.) 5 F.(2d) 818. He may be examined for the purpose of impeaching his credibility. Reagan v. United States, supra, 305 ([of 157 U. S.], 15 S. Ct. 610); Fitzpatrick v. United States, supra, 316 ([of 178 U. S.], 20 S. Ct. 944). His failure to deny or explain evidence of incriminating circumstances of which he may have knowledge may be the basis of adverse inference, and the jury may be so instructed. Caminetti v. United States, supra. His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing.

"If, therefore, the questions asked of the defendant were logically relevant, and competent within the scope of the rules of cross-examination, they were proper questions, unless there is some reason of policy in the law of evidence which requires their exclusion."

The decision in the case of Tucker v. United States, 5 F.(2d) 818, which was cited with approval by the Supreme Court, is by the Circuit Court of Appeals for the Eighth Circuit. This court said [page 822 of 5 F.(2d)]:

"If the accused testifies in his own behalf, manifestly his testimony should be subjected to the same tests for determining its truthfulness as that of any other witness. The primary purpose of cross-examination in the federal courts is to test the truth of the testimony adduced by the direct examination and to clarify or explain the same. It is not to prove independent facts in the case of the cross-examining party.

"If there is good reason why a defendant should not be compelled to be a witness against himself, there ought to be equally good reason why, if he has testified voluntarily upon one issue, he should not be compelled to testify against his will concerning matters wholly unrelated to that issue, which would not be within the scope of proper cross-examination if he were an ordinary witness.

"We conclude that, when a defendant in a criminal case voluntarily becomes a witness in his own behalf, he subjects himself to cross-examination and impeachment to the same extent as any other witness in the same situation, but he does not subject himself to cross-examination and impeachment to any greater extent"—citing Harrold v. Territory of Oklahoma (C. C. A. 8) 169 F. 47, 17 Ann. Cas. 868; Paquin v. United States (C. C. A. 8) 251 F. 579; Fitzpatrick v. United States, 178 U. S. 304, 315, 316, 20 S. Ct. 944, 44 L. Ed. 1078; Sawyer v. United States, 202 U. S. 150, 165, 26 S. Ct. 575, 50 L. Ed. 972, 6 Ann. Cas. 269.

See, also, Gideon v. United States (C. C. A. 8) 52 F.(2d) 427; Coulston v. United States (C. C. A. 10) 51 F.(2d) 178; Madden v. United States (C. C. A. 9) 20 F.(2d) 289; Powers v. United States, 223 U. S. 303, 32 S. Ct. 281, 56 L. Ed. 448; Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

The Circuit Court of Appeals for the Fourth Circuit, in Bolling v. United States, 18 F.(2d) 863, 865, says: "* * * Where the accused in a criminal trial voluntarily takes the stand, he is a witness for all purposes, and can be properly cross-examined upon all material matters connected with the particular case."

This states the rule too broadly, and goes beyond the cases cited as authority for it. A defendant may take the stand, and, by omitting to testify as to incriminating matters unrelated to those matters about which he has testified, prevent the prosecution from cross-examining him fully, subjecting himself, however, to the unfavorable inferences which may

be drawn from his failure to make a full disclosure. This is well illustrated by Caminetti v. United States, supra.

█ It must also be kept in mind that it is not the specific matters which are mentioned by the defendant in his direct testimony which determine the scope of the cross-examination, but the subject inquired about. "The right of cross-examination is not confined to the specific questions or details of the direct examination, but extends to the subject-matter inquired about." De Witt v. Skinner, 232 F. 443, 445 (C. C. A. 8).

█ The cross-examination of Caniglia, who had testified generally as to his connection with this distillery and his relation to the other appellants, and the cross-examination of Salerno as to whether he had ever purchased any liquor at the distillery, he having testified on his direct examination that he had no criminal connection with the distillery and no interest in the liquor produced, was not improper. See Fitzpatrick v. United States, supra; Powers v. United States, supra.

█ There was error in the cross-examination of McDonald. What occurred was this: He was asked whether he had ever been convicted of a felony. His answer was, "What do you mean, felony?" He was then asked, "Have you ever been convicted of an offense for which you might have been sent to the penitentiary if the judge had decided to send you there?" This was objected to as improper cross-examination; the objection was overruled; and his answer was, "I don't believe I have." He was then asked, "Don't you know?" His answer was, "Oh, I have been arrested for speeding or something like that." Following this, the cross-examiner asked, "Been arrested for more than that, haven't you?" This was objected to as "incompetent, irrelevant and immaterial and not proper cross-examination, whether he has been arrested or not." The objection was overruled, and his answer was, "Well, I was arrested once for carrying concealed weapons, that is, in my car."

"Q. Do you carry weapons all the time? (Objected to on the same grounds, and objection overruled.) A. No, sir.

"Q. How much of the time? (Same objection; same ruling.) A. Only when I have some money on me.

"Q. Do you have a permit? (Same objection; same ruling.) A. No, sir."

The question as to whether McDonald had been arrested and the question as to whether he carried a gun without a permit did not call for evidence relevant to any of the issues in the case, nor did they constitute proper impeachment.

The general rule is that such improper cross-examination constitutes reversible error. Havener v. United States (C. C. A. 8) 15 F.(2d) 503; Gideon v. United States (C. C. A. 8) supra; Coulston v. United States (C. C. A. 10) supra. When, in the prosecution of a defendant, counsel for the government indulges in unfair and improper cross-examination, the only purpose of which is to degrade the defendant and to prejudice the jury against him, the government, upon appeal, will not ordinarily be heard to say that the methods which were used did not have the effect which they were obviously intended to have. Since the enactment of section 391, title 28, USCA, an error is not, however, presumed to be prejudicial. The burden of showing prejudice is upon the appellant, and he is not entitled to the reversal of a judgment of conviction, unless it appears that he was denied some substantial right and thereby prevented from having a fair trial. Rich v. United States (C. C. A. 8) 271 F. 566; Trope v. United States (C. C. A. 8) 276 F. 348; Hall v. United States (C. C. A. 8) 277 F. 19; Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185; Hermansky v. United States (C. C. A. 8) 7 F. (2d) 458, 460; Furlong v. United States (C. C. A. 8) 10 F.(2d) 492; Miller v. United States (C. C. A. 8) 21 F.(2d) 32.

We must therefore determine whether, because of the errors referred to, McDonald was actually prejudiced. The record does not indicate that government counsel was intentionally unfair, but, rather, indicates that McDonald, by evading questions which were proper, and making unresponsive answers, led counsel and the court into committing the errors complained of. McDonald volunteered that he had been arrested for speeding. He also volunteered that he had been arrested for carrying concealed weapons. He was the one who injected into the case the subject of arrest and the carrying of weapons. There can be no doubt that it was the testimony of Jeff Stewart which brought about the conviction of Caniglia, Salerno, and McDonald. All of the other testimony in the case was merely corroborative of Stewart. According to his story, he had been employed by Salerno and McDonald as a "cooker," and he disclosed fully his connection with the distillery and the connection of the other defendants with it. While it was the contention of Salerno

and McDonald that they were mere customers of Scrapo and Caniglia, who operated the distillery, they both admitted knowing these men and having received liquor produced in the distillery. The jury believed the story of Jeff Stewart. That they might have believed this story in so far as it involved Caniglia and Salerno, but have rejected it as to McDonald except for the admissions obtained from him upon cross-examination that he had been arrested for carrying concealed weapons and that he did on occasion carry weapons without a permit, is highly improbable.

In Apt v. United States, 13 F.(2d) 126, 127, this court, after having severely criticized the method of the United States attorney in cross-examining the defendant, said: "If it were probable the cross-examination had prejudiced the jury against the defendant to the extent of influencing their verdict, it would be the duty of the court to reverse the verdict in the interest of justice. But this cross-examination, though improper, could not have been prejudicial. The connection of the defendant Apt with the conspiracy charged in the indictment was so clearly shown, and the verdict of the jury such a righteous one, that it would be a miscarriage of justice to reverse it on account of this indefensible cross-examination." See, also, Hall v. United States (C. C. A. 8) supra, and Miller v. United States (C. C. A. 8) supra.

In view of the abundance of competent evidence in this case to justify the conviction of McDonald, and in view of the conviction of Caniglia and Salerno upon virtually the same evidence, we have reached the conclusion that we would not be justified in holding that the improper cross-examination of McDonald deprived him of a fair trial or constituted reversible error.

The judgments as to all of the appellants are affirmed.