**Larry Howard HOMAN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16252.**

United States Court of Appeals
Eighth Circuit.

June 7, 1960.

Rehearing Denied July 15, 1960.

Tom Kelley, Omaha, Neb., for appellant.

Dean Wallace, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

JOHNSEN, Chief Judge.

Appellant was found guilty by a jury on each of the three counts in an indictment. One count charged him with having unlawfully seized a woman in Omaha, Nebraska, and captively transported her from Nebraska into Iowa, for the purpose of committing rape upon her—in violation of 18 U.S.C.A. § 1201 (Lindbergh Act). Another count charged him with having also done these acts for the purpose of robbing the woman—in further violation of § 1201. The last count charged independently that he had transported the woman across the Nebraska line into Iowa for the purpose of debauchery and other immoral purposes—in violation of 18 U.S.C.A. § 2421 (Mann Act).

The jury did not assess the death penalty, as it could have done on the first count, under the allegation therein that the woman had not been liberated unharmed, and the court thereafter imposed sentences of 15 years, 5 years and 2 years of imprisonment on the respective counts, with the sentences to run concurrently.

The victim of these several wrongs was a married woman 38 years of age, the wife of a "Tech Sergeant" in the United States Air Force. The couple had two children, 16 and 12 years old. The family lived together at the Offutt Air Force Base, located near Omaha. Appellant was a 19-year youth of the black jacket and levi apparel-fashion, unacquainted with his victim, and having a prior felony conviction.

The evidence is not weak but of most impressive strength in its proof of the occurrence of the unlawful seizure, captive transportation and perpetration of the rape and robbery as claimed by the prosecutrix. Indeed, it does not seem possible that on the testimony and circumstances in the record any jury responsibly could or would do other than return a verdict of guilty. The proof of guilt did not rest alone upon the testimony of the prosecutrix, but there were numerous elements, direct as well as indirect, supportive of the crucial things to which she testified.

Of direct general corroboration was the testimony of two agents of the Federal Bureau of Investigation as to the admissions which appellant had made after his arrest. These admissions accorded fully with the woman's story of what had occurred—that appellant had suddenly appeared alongside her car in a parking lot, as she was entering it in the dusk, and with knife in hand had made her slide over in the seat and allow him to take control of the car; that under threat of the knife, held pointed at her from the steering wheel, he had forced her to remain in the car as he drove away from the lot, headed toward the Missouri River Bridge and crossed into Iowa; and that, once off the main highway in Iowa, he had tied her with a rope, had subsequently ordered her to disrobe on a side road, and had then in caution driven to a completely isolated spot, where he had made her submit to sexual relations with him.

The two agents further testified that appellant had both a rope and a knife on his person at the time he was arrested; that he admitted that the rope was the one which he had used to tie the woman; but that the knife which he had was not the one which he employed on the occasion, the latter having been tossed by him into the Missouri river and the one then possessed by him having been purchased the following day.

Corroboration of the fact that the woman had been tied existed also from the testimony of her husband and a doctor at the Air Base Hospital as to the red marks which were present on her wrists. The further testimony of these witnesses as to her indication of fright

and nervous state and to her need for sedation was capable too of adding corroboration on the nature of the experience which she had undergone. Similarly, on other circumstantial aspects, her testimony that, before appellant finally turned back the car to her, he had undertaken to wipe off all his fingerprints in it could be found to have corroboration in the testimony of the F.B.I. agents that the inside of the car, when checked by them, was without any prints, except some on the steering wheel which the woman had used in driving the car home. And, on the question of whether appellant had robbed her of her billfold, or whether she had charitably made a gift of it to him, as he claimed, there was testimony that, after he had driven the woman back to Omaha and left the car, he had taken the billfold to a tavern in a neighborhood which he frequented and concealed it behind a loose section in the ceiling of a back room.

Appellant makes no claim here that whatever oral statements he made to the F.B.I. agents at the time of and immediately following his arrest were in any way involuntary or the product otherwise of any advantage taken of him. His testimony simply denied that he had ever said the things which the agents testified he admitted to them. His story on the trial as to what had occurred was that while it was true he had driven the woman's car over into Iowa and had had intercourse with her, this had been because of both willingness and inducement on her part.

He said that the incident began by her making a remark to him as she passed him about a half-block away from the parking lot, where he was loitering, and that he had accordingly walked with her to the car. He admitted that she had told him, as he was driving the car, that she was a married woman and that she had telephoned her husband just before she went to the parking lot, informing him that she was starting for home. Her testimony had been that she had sought by means of this and other statements as to her family to dissuade him from his obvious objective. Appellant said that the family information, including the ages of her children and her home relationships, was given to indicate her willingness and desire, but at the same time to urge upon him that they had to hurry, since her husband was waiting for her at home. In fact, he sought to depict himself to the jury as having been possessed of a moral reluctance in the situation, after he learned that she was a married woman, modestly testifying that he had, in the midst of his sexual performance, abruptly halted and declared, "I don't think it is right. You had better put your skirt back on". And as to his possession of the billfold, with its $18 in cash, he similarly testified, "Before I had gotten out of the car * * I did accept the money from her, which was wrong I thought".

Appellant contended also, of course, that there were elements which lent credence to his version of the events, such as the fact that the woman admittedly had not screamed in the parking lot; that she had not attempted to attract the attention of pedestrians in the street or of passing cars as he drove; and that she had not at any time undertaken to escape by opening the door and jumping out of the car.

She had testified that the windows of the car were at all times closed; that she was in fear of the knife blade which he kept pointed at her and the threat which he made that he would use it if she tried to attract attention or to escape; and that she further was impelled to restraint because of appellant's extension of his threat, after she had revealed that she had children, by a declaration that he would "take care" of her children also, or see that some of his friends did so, if anything happened to him.

It is not necessary to set out further details of the evidence. We think the record is of such marked strength in its proof of appellant's guilt that the errors relied on for reversal and the question of prejudice therefrom must be realistically considered in relation to this convincing aspect. The situation is one

where it would seem especially appropriate not to lose sight of the admonition of Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A., that "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded".

■ Errors of the trial court which may be prejudicial in a close criminal case, in the sense of being capable in such a situation of possibly affecting the result, can well be without any such rational possibility in a strong case, and thus not entitle the defendant to a reversal of his conviction. The reviewing court must, of course, be able to say with fair assurance that the errors complained of could not, with natural operation in the total setting and proceedings had, be regarded as having possessed any influencing effect. Blackwell v. United States, 8 Cir., 244 F.2d 423, 431. "If, [however], when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress" (presumably as a question of substantive or procedural due process). Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557.

■■ The first error complained of here is that the trial court permitted a question to be asked on cross-examination of one of appellant's witnesses as to previous misconduct on his part not representing a felony conviction.

Appellant, in his endeavor to induce the jury to believe that he did not have a knife at the time of the events involved, testified that he had been carrying a kitchen paring-knife, belonging to his mother, up until mid-afternoon of that day, when he had had one of his friends drive him home in order to make return of the knife before his mother discovered its absence. He then had the friend take the witness stand and testify that he had driven appellant home for a few minutes in mid-afternoon, as the latter claimed, and that appellant had told him at the time that "he wanted to take a knife home". The court had initially sustained an objection to the testimony of the witness as to this alleged statement of appellant as a self-serving declaration and for remoteness, but then, in liberalness toward appellant, reversed the ruling and allowed the witness to give the testimony.

On cross-examination, the Assistant United States Attorney asked the witness, "Have you ever been in trouble with the law before?" The question was objected to as improper, but the court overruled the objection. Presumably, the court regarded the question as being merely a preliminary one, which Government counsel was intending to follow up with a direct interrogation as to felony conviction. Instead, when the witness answered "Yes" to the question, Government counsel dismissed him, saying, "No further questions".

We have repeatedly held—and this is also the rule generally—that acts of prior misconduct on the part of a witness not resulting in his conviction of a crime may not be delved into on cross-examination, in an attempt to impeach the credibility of his testimony. Illustrative of these holdings are Lennon v. United States, 8 Cir., 20 F.2d 490, 494; Echert v. United States, 8 Cir., 188 F.2d 336, 343, 26 A.L.R.2d 752; Packineau v. United States, 8 Cir., 202 F.2d 681, 687. We have further declared that, where the Government deliberately violates this rule in a criminal case and the question is of a character to involve degradation, it will not ordinarily be heard to assert that the error could not be prejudicial. Little v. United States, 8 Cir., 93 F.2d 401, 408; Salerno v. United States, 8 Cir., 61 F.2d 419, 424.

But in all of the cases in which the rule has been applied, there has been present an element which is lacking in the present situation. In each instance, the witness so attempted to be discredited was either the defendant or one who had given testimony of substance, materiality and relevance, on an element hav-

ing some reasonable relationship to the question of the defendant's guilt.

Here, as against the prosecutrix's testimony that appellant had used a hunting knife, not a kitchen knife, upon her, there could hardly be much disproving aspect involved in whether he had or had not during the course of the afternoon returned a paring knife of his mother's to his home. A jury would not, we think, be able to find much probativeness in the circumstance, assuming it occurred, as against the various corroborated elements shown, such as the prosecutrix's wrist marks, appellant's hiding of her billfold, etc. And if the court had excluded all evidence as to the kitchen knife, on the ground of its remoteness or lack of materiality, quite unquestionably we would have held that no prejudicial error of substance had been committed.

Thus, the situation presented is one where determination of the question of appellant's guilt could not possibly, in our opinion, be affected by whether the testimony of the witness involved was impeached or not, either as a matter of his lack of credibility or otherwise. The rule referred to above is therefore not one that reasonably calls for application here. As a matter of fact, even in situations where such improper cross-examination as is here involved has occurred as to a witness—not the defendant—who has given testimony of substance, materiality and relevance, so as to make the rule operative, we have not allowed the rule to have an abstract and absolute application. We have affirmed convictions, on the strength of the proof of guilt, in situations where the cross-examination as to acts of misconduct on the part of such a witness has involved more flagrancy than here, but where we equally were satisfied that this could not in the circumstances have affected the result. See e. g. Apt v. United States, 8 Cir., 13 F.2d 126, 127; Salerno v. United States, 8 Cir., 61 F.2d 419, 424–425.

 The second error urged by appellant is that the trial court permitted the Government to introduce evidence as to the prosecutrix's good reputation for truth and veracity, although there had been no assailment of that reputation by appellant.

The general rule is that, until the reputation of a witness for truth and veracity has been assailed by evidence in relation to it, it is not in issue, and that there accordingly exists in such a situation no right to introduce testimony in support of it. Central Coal & Coke Co. v. Penny, 8 Cir., 173 F. 340, 346; 58 Am.Jur., Witnesses, § 812. Mere contravening testimony by other witnesses on the facts does not constitute such an assailment in the sense of the rule. Vandeventer v. Traders' Nat. Bank of Kansas City, 8 Cir., 241 F. 584, 587.

Wigmore recognizes as the underlying basis of the rule the fact that every witness is in law assumed to be of normal moral character for veracity and that it therefore is not until his character is in this respect brought specifically into question that "it * * * becomes worth while to deny that his character is bad". IV Wigmore on Evidence, 3rd ed., § 1104. Similarly, there is also judicial declaration that "the law presumes every person to be reputed truthful till evidence shall have been produced to the contrary and therefore, for one to take the initiative in establishing that which needs no support, other than the legal presumption, is useless". Johnson v. State, 129 Wis. 146, 108 N.W. 55, 58, 5 L.R.A.,N.S., 809.

The cases generally, however, appear to accord to the receiving of testimony as to a witness' good reputation for truth and veracity, where his character in this respect has not been expressly attacked, a greater possible trial significance than the mere needless burdening of the proceedings or the distracting injection of collateral issues. They recognize that such testimony is capable at times of so bolstering a witness' testimony as artificially to increase its probative strength with the jury, and that its admission therefore may in some situations on this basis constitute reversible error. See Annotations, 15 A.L.R. 1066 and 33 A.L.R. 1220. In fact, there are state court decisions going so far as to grant

reversals in such situations without any examination of the possibility of prejudice or lack of it in the particular situation.

Our search, however, has revealed no such absolute declaration in the federal decisions, nor would it seem to be in harmony with the responsibility implicit in the provisions of Rule 52(a), supra, for a federal court abstractly to take such an unappraising position. As a matter of fact, the only federal case which we have been able to find, in which the question of the effect of the admission of evidence as to the good reputation of a Government witness for truth and veracity has been specifically considered is Kauz v. United States, 5 Cir., 188 F.2d 9. There, the court dealt with the error, under Rule 52(a), on the basis of its possibility of prejudice in the particular situation and refused to reverse the conviction, saying: "Though technically the objection made to the testimony [as to the good reputation of two Government witnesses for truth and veracity] * * should have been sustained, we are not persuaded that this testimony prejudicially affected the jury when the evidence of appellant's guilt is as clear, reasonable, and convincing as it is here". Id., at page 10.

We have in a long line of opinions declared that, on an unsettled question of federal law, while a decision by another Court of Appeals is not compulsively binding upon us, we will, in the interest of judicial uniformity, accept it as persuasive and follow it, unless we are clearly convinced that it is wrong. Bright v. State of Arkansas, 8 Cir., 249 F. 950, 952; New Amsterdam Casualty Co. v. Iowa State Bank, 8 Cir., 277 F. 713, 716; Hennepin County, Minn. v. M. W. Savage Factories, 8 Cir., 83 F.2d 453, 456; Guaranty Trust Co. of New York v. Henwood, 8 Cir., 98 F.2d 160, 163; United States v. Blosser, 8 Cir., 104 F.2d 119, 121; Grain Belt Supply Co. v. Commissioner, 8 Cir., 109 F.2d 490, 492; Martyn v. United States, 8 Cir., 176 F.2d 609, 610; Birmingham v. Geer, 8 Cir., 185 F.2d 82, 85; Prewett v. Commissioner, 8 Cir., 221 F.2d 250, 252; Commissioner of Internal Revenue v. Moran, 8 Cir., 236 F.2d 595, 596; Goodenow v. Commissioner, 8 Cir., 238 F.2d 20, 22; Cosentino v. Local 28, etc., 8 Cir., 268 F.2d 648, 652.

Had the testimony of the prosecutrix here stood alone against that of defendant, without such elements of outside corroboration as were present, we might have had some hesitancy in declaring that proof of her good reputation for truth and veracity could not have added something in the jury's persuasion as to what had occurred. But, if the corroborative physical circumstances shown and the evidence of the F.B.I. agents as to appellant's admissions had not convinced the jury of the truth of the prosecutrix's testimony by judgment on tangible events, it would not seem reasonably possible that such a persuasion could be intangibly produced through an expression as to the prosecutrix's veracity on the part of some friends.

As previously emphasized, there was here such probative corroboration of the prosecutrix's story of what had occurred as to make seem overwhelming the proof of appellant's guilt. In this situation, we are satisfied that the admission of the testimony as to the prosecutrix's veracity, while constituting technical error, cannot realistically be regarded as having been a possible factor in the result. As in the Kauz case, supra, we therefore feel constrained to hold, in the interest of criminal administration, that it is not something which under the circumstances entitles appellant to a reversal.

The third error claimed relates to some questioning engaged in of the F.B.I. agents by Government counsel as to the circumstances of their attempt to have appellant's oral admissions reduced to a written statement. The F.B.I. agents had produced a document, given identification as an exhibit, which they said had been dictated by one of them in appellant's presence as a summary of the admissions which he had made to them; had been read over by appellant and its accuracy agreed to by him; but

had not been executed by him, because he expressed himself as not desiring to sign anything without the approval of his lawyer. As in the case of his oral admissions previously referred to, appellant makes no contention here that there had been any coercion or other advantage taken of him in relation to this document. He admitted in his testimony that he had been advised by the agents that he did not have to make such a statement; that any statement which he made could be used against him; and that he was entitled to counsel and to have such counsel present, if he so desired. He further admitted that he did not then desire counsel; that he was perfectly willing to make a written statement, but he claimed in his testimony that the document involved did not contain what he told the F.B.I. agents and that this was the reason why he had refused to sign it.

These facts had all been the subject of a preliminary hearing before the court, out of the presence of the jury. The hearing had been requested by appellant's counsel when the Government began to interrogate the F.B.I. agents as to any admissions which appellant had made. The hearing covered the field of both the oral admissions made and the subsequent attempt to have these reduced to a written statement. The court at first declared that the evidence as to voluntariness was sufficient to permit both the oral and the written statements to be presented and submitted to the jury. Later, however, the court ruled that it would admit the testimony of the agents as to the oral admissions made to them but would sustain appellant's objection to the written statement. Government counsel then requested and was granted leave to submit a brief upon the admissibility of the written statement.

Upon the trial being resumed before the jury, Government counsel interrogated the F.B.I. agents and brought out all the admissions which the agents claimed appellant had made orally at the time of his arrest and immediately following. These have been referred to above, and the legal propriety of the receipt of this testimony is, as has been indicated, not questioned here.

After the oral admissions had been fully covered, Government counsel asked the agent who was then on the stand whether they had undertaken to obtain a written statement from appellant. Over objection by appellant, the court permitted Government counsel to show that the written statement involved consisted entirely of what appellant had orally told the agents; that it was prepared by going over each aspect of appellant's previous story with him and then dictating it piecemeal to a stenographer as the various phases were covered; that as each aspect was dictated appellant was asked whether it was correct, and any change suggested by him in form of expression or language was made; that when the statement had been transcribed it was handed to and read over by appellant, who declared that it was true and correct but that "he didn't want to sign it until he had conferred with an attorney as to whether he should or not"; that he was given the opportunity to make a telephone call to an attorney of his choice for this purpose but was unable to reach the latter; and that the statement thus never was formally signed by him.

Government counsel thereafter made offer of the statement as being entitled to be received in evidence. Counsel for appellant objected to the competency of the statement as not being appellant's product but that of the F.B.I. agent in view of its dictation by him and appellant's refusal to sign it. Counsel also at that stage, for the first time, made a charge that the interrogation as to the statement before the jury was misconduct, and requested a mistrial, because of the court's previous declaration that it was going to exclude the statement.

The court sustained the objection to the statement, in accordance with its previously expressed view, but did not feel that the efforts of Government counsel to have it admitted involved any misconduct and denied the motion for a mistrial. In fact, the court implied that it still held

some doubt as to whether the statement might not be admissible, saying at the close of its ruling, "If Government counsel desires to furnish a brief before the trial is over, I will then be willing to reconsider my ruling". Government counsel similarly proved the circumstances relating to the statement by the other F.B.I. agent who was present at the time. Counsel for appellant gave no indication at that time that he felt that any misconduct was involved and made no renewal of his objection.

It is now contended that what Government counsel did constituted deliberate and prejudicial misconduct. As has been indicated, the trial court did not so view it either in its form or setting, and it expressed itself as still being open to persuasion on whether its ruling of exclusion had been improper. Nor from what it has been shown that counsel for appellant said and did does it impress that he regarded anything more as being involved than the formality of an objection on his part, which he was content not to renew.

The argument made here is that "This [interrogation] allowed 'buttressing up' oral admissions previously testified to by the witness in an indirect manner when it couldn't be done directly". There was no attempt, however, to bring out or develop before the jury the contents of the statement, except as the implication existed, of course, from the testimony of the agents that it had constituted an attempted reduction to writing of appellant's previous oral admissions. How this could have the effect of "buttressing up" those admissions we are unable to see, in view of the fact that appellant had declined to sign the instrument and that the court refused to admit it in evidence. Rather, it would seem that, if any psychological impact could be created, this would be in the opposite direction.

But, as indicated, the trial court did not regard what was done as having involved any psychological intent or consequence. It viewed the attempt of Government counsel to lay a foundation for and to make a record as to the statement

as representing a perfectly proper and good-faith effort at court persuasion and not at jury impact, and as serving to put the proceedings into orderly position for an admission of the statement, if it decided on further consideration that its previous impression and ruling were wrong. This evaluation is apparent from its expression of repeated willingness to engage in such a reconsideration on the submission of a brief to it.

We can see no possible reversal merit in the contention of misconduct and prejudice which appellant has made.

 The final error asserted is predicated on a statement of Government counsel in his closing argument to the effect that "I think he [appellant's counsel] knows [appellant] is guilty".

Accusations or remarks of this nature should not enter into jury arguments. But there is no way to prevent them from at times occurring in natural human reaction. And when they do happen, this reality must be allowed for, and examination engaged in of them in their setting, and appraisal made of their capacity in the circumstances to prejudice the result. American forensic tradition, while never licensing such lacks of restraint, has always judged them unartificially, in a fair-play spirit, on the basis of a jury having common intelligence and understanding, and with a consideration of how they may have been prompted. Cf. Mellor v. United States, 8 Cir., 160 F.2d 757, 765. While Government counsel may not subject a defendant to an unfair trial, he cannot, like the court, be expected to cease entirely being an advocate. See Henderson v. United States, 6 Cir., 218 F.2d 14, 19–20, 50 A.L.R.2d 754.

Scrutinizing the setting of the remark here made, it is to be noted that counsel for appellant, in his argument to the jury, had precedingly said: "When this boy's uncle and mother came to me and asked me to represent Larry, I went over and I heard that story that you heard here, and I just shook my head. And then I started into it to find out what

the truth was. * * * I am here defending on a straight, honest, truthful basis. I think anybody who knows me will tell you that." It was apparently in response to this that Government counsel closingly stated: "I have to commend Mr. Kelley [appellant's counsel] for the job he has been able to do to represent that boy whom I think he knows is guilty".

Objection was made, and Government counsel did not carry the statement further. Obviously, the argument of appellant's counsel as much was intended to tell the jury that he thought his client was innocent (for the value which he hoped that such a fiat on his part would have) as that of Government counsel was intended contrariwise to assert that "I think he knows [his client] is guilty".

The response of Government counsel to the expression of appellant's counsel thus would seem to have been both prompted and not unnatural in the situation. And on this apparently equal exchange, we do not believe that the one expression would have any more force with the jury than the other. In fact, one would have to be naive to think that the jury would in the situation accord any effect to either. Plainly, the situation does come within the rule that statements made in oral arguments, to constitute reversible error, must have been plainly unwarranted and clearly injurious. Mellor v. United States, 8 Cir., 160 F.2d 757, 765; La Feber v. United States, 8 Cir., 59 F.2d 588, 599.

What the Supreme Court said of the argument in United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239–240, 60 S.Ct. 811, 852, 84 L.Ed. 1129, where there had been an obvious appeal to class prejudice, may be recalled here:

"Some of the statements * * * were, we think, undignified and intemperate. They do not comport with the standards of propriety to be expected of the prosecutor. But it is quite another thing to say that these statements constituted prejudicial error. In the first place, it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately. In the second place, this was not a weak case * * *. Of course, appeals to passion and prejudice may so poison the minds of jurors even in a strong case that an accused may be deprived of a fair trial. But each case necessarily turns on its own facts. And where, as here, the record convinces us that these statements were minor aberrations in a prolonged trial and not cumulative evidence of a proceeding dominated by passion and prejudice, reversal would not promote the ends of justice."

In the present situation, it is true that the trial court did not at the moment grant the request of appellant to have the jury instructed to ignore the prosecutor's remark. But there could be no prejudice ultimately claimed from this in the situation since, when the court came to its charge to the jury it expressly directed that "You are to found your verdict upon the evidence received and upon that alone", and "You are not to permit yourselves to be influenced * * by any statements of counsel during the progress of the trial, or any arguments that are not justified by the evidence, if any such statements or arguments have been made".

In summary, we are fully satisfied from a careful consideration of the whole proceedings that appellant has had a fair trial; that no error has been committed which, either individually or cumulatively, can be regarded as having been prejudicial in the circumstances; and that a reversal could not in any way promote or serve the ends of justice.

Affirmed.