## POWELL v. STATE.

### [66 South. 979.]

1. WITNESSES. *Cross-examination. Criminal law. Evidence.*
    In a trial of accused for the unlawful sale of intoxicating liquors, it was not misconduct of the district attorney prejudicial to the rights of defendant, for the district attorney on cross-examination of a witness for the accused to ask him if he was a "pimp" for blind tigers while endeavoring to show that he was a drummer for those engaged in the unlawful sale of liquor, though the word "pimp," is usually used to denote a "male steerer" for houses of ill fame.

2. CRIMINAL LAW. *Demonstrative evidence.*
    In a trial of defendant for the unlawful selling of intoxicating liquors, it was not improper for the state to produce before the jury the bottle of whiskey identified by the witness as having been bought from the defendant.

    108 Miss. 32

APPEAL from the circuit court of Forrest county.
HON. PAUL B. JOHNSON, Judge.
Susie Powell was convicted of selling intoxicating liquor and appeals.
The facts are fully stated in the opinion of the court.

*J. E. Davis,* for appellant.

Appellant insists that this case should be reversed and remanded, as she was not accorded a fair and impartial trial. She especially urges that the third assignment of error is well taken. The state's attorney was unmindful of the rights of the defendant, and did her a grave injustice in propounding the highly improper and prejudicial questions to the defendant's only witness, McComb. It is the duty of the prosecuting attorney to protect the state's citizens, however humble; and to see that equal and exact justice is done every person charged with crime, regardless of his place or position in life. But, over zealous prosecuting attorneys in their eagerness to convict, and in many instances personal spite and malice, become persecutors, and by reason of the influence of their position as an officer of the state and a part of the machinery of the court, procure convictions unjustly.

A person, especially a negro, charged with selling liquor, comes before a jury under a ban of suspicions; all "presumptions" are against her. Her race (as in this case a negro woman), evidence of former convictions, the nature of the accusation, the desire of the jurors in most instances to render verdicts pleasing to the state, are all matters that weighed against this defendant. For the district attorney, to attempt to cast aspersions on her sole witness, was more damaging to her cause than any statement derogatory to her, he could have made. It cannot be argued that the court ruled that this line of examination was incompetent and

.hence, the defendant not harmed. Neither can it be argued that the fact that the witness answered the interrogatories in the negative, she was not harmed thereby. The judge did not state to the jury that the questions were excluded; he could not have done so with effect; the mind and state of feeling of the district attorney were made known to the jury, and there was no way to relieve the jury of the effect of the improper question.

What more excuse would a jury want to convict? They were told in effect by the district attorney that this defendant was a "blind tiger;" was running "blind tiger stand;" and that the only witness by whom she could prove her innocence, was "a pimp," a friend of blind tigers and a perjurer; that his wife was tried for a similar offense. The state's attorney knew that these questions were wholly incompetent and that the defendant would interpose objections, and that the same would be sustained by the court. Then why were these questions asked the witness? For the purpose of branding the witness in the estimation of the jurors as one wholly unworthy of belief, and consequently to lead the jury to the conclusion that the defendant was endeavoring to fabricate a defense and had engaged the witness, "a pimp," for that purpose.

The court should not have admitted the bottle of liquor in evidence; it was not properly identified, and could only further arouse the passion and prejudice of the jury. An uncorked bottle of whisky displayed before the jury trying a person for selling whisky, is like waving a red flag before an angry bull. If any presumption of innocence remained up to this time, the same would disappear like the "mist before the morning sun," and every presumption of guilt would appear to the full satisfaction of the jury.

We most respectfully submit that this defendant should be given the benefit of a legal and fair trial.

*Geo. H. Ethridge,* Assistant Attorney-General for the state.

If the district attorney was a little severe on the witness for the defendant in shaping his question to him, there is nothing that would justify a reversal. It may be that the court should have reproved the district attorney, but from a reading of the record, the language used did not intrinsically carry any insult or odious signific004-tion. Exactly what was meant by the term used in asking the witness if he was not a pimp for blind tigers is not known to me. I assume that it is a colloquialism among some elements in this case. It may be that the word was coined in Hattiesburg. The record does not show any proof as to the meaning of this term on the motion for a new trial and I presume the district attorney was within his rights in coining language. I see nothing in the record to relieve Susie from the two hundred dollar fine imposed and suggest that the case should be affirmed.

Cook, J., delivered the opinion of the court.

Appellant appeals from a conviction upon a charge of selling intoxicating liquors. The state proved the sale by two witnesses, who were corroborated by a third. The defendant admitted, while she was testifying as a witness, that she had been convicted for selling whisky five or six times before.

Appellant relies upon two grounds for a reversal, viz.: (1) The district attorney, by questions propounded to one of defendant's witnesses, cast reflections upon the good name of the witness, and thereby prejudiced the jury against defendant. (2) The court permitted the state to introduce the bottles of whisky which it was alleged the witness for the state bought from defendant.

The basis for the first complaint is the following

questions propounded by the district attorney to defendant's witness, viz.:

"Q. Your business is, you are simply a pimp for these various whisky stands? A. No, sir; I don't stay here. Q. You are nothing but a pimp for a lot of these blind tigers down here? A. No, sir. Q. You say you are not a pimp? A. No, sir; I works. Q. Why is it you are around this court at every term? A. I have a summons right here in my pocket."

It is contended that these questions were grossly improper, and calculated to cast reflections upon the fair name of the witness. It is claimed that the questions were impertinent, indelicate, and embarrassing, and the district attorney abused his great powers as a public prosecutor in thus calling in question the high character of the witness.

Perhaps the use of the word "pimp" was inaccurate. We are advised that this word is generally used to characterize "male steerers" for houses of ill fame; but it is clear that the district attorney was endeavoring to show by the witness that he was a "drummer" for those engaged in the unlawful sale of intoxicants, and, if he could show that, it would weaken his testimony in the present case. Naturally, this line of inquiry was not altogether pleasing to the defendant, or to the witness; but we do not believe the district attorney violated the proprieties or the rights of defendant. In the trial of cases of this sort, the court is not conducting a drawing room function, and the lawyer for the state is often compelled to resort to the argot of the underworld in his efforts to bring the facts before the jury.

It seems that the bottle of whisky in question was produced in court, exhibited to the jury, and identified by the witness. In her brief the appellant says:

"An uncorked bottle of whisky displayed before a jury trying a person for selling whisky is like waving a red flag before an angry bull. If any presumption of in-

nocence remained up to this time, the same would dis-
appear like the 'mist before the morning sun.' "

Appellant is a little mixed in her metaphor, but we ap-
prehend that she means to convey the idea that the mere
exhibition of whisky to a thirsty jury would be tantaliz-
ing in the extreme, but it seems to us that the state would
be the victim of the jury's unsatisfied longing and conse-
quent resentment. Appellant slept upon her rights, and
failed to avail herself of her opportunities. She should
have demanded that the jury be permitted to sample the
goods. We may be wrong in this, however, as the quality
of the sample would, of course, have much to do with
this bold experiment.

*Affirmed.*