**UNITED STATES v. COHEN et al.**

**No. 16, Docket 21328.**

United States Court of Appeals
Second Circuit.

Argued Oct. 5, 1949.

Decided Nov. 1, 1949.

Edwin H. Krom, of New York City, for appellants.

Frederick H. Block, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., and Bruno Schachner, Asst. U. S. Atty., both of New York City, on the brief), for appellee.

Before L. HAND, SWAN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The defendants, William and Katherine Cohen, were tried to a jury on two counts of an indictment charging them with having sold heroin in violation of 21 U.S.C.A. §§ 173, 174. On two different occasions government agents had given marked money to informers, having first searched the informers to ascertain that they had no heroin at that time. In each case the informer, constantly under the gaze of the government agents, proceeded to meet the defendants, hand them bills, and receive something from one of the defendants. The packages given to the informers were turned over to the agents immediately after the informer had parted with the defendants, and upon analysis were determined to contain adulterated heroin. Shortly after the second of these incidents defendants were arrested, and William Cohen was found to have $16 of the marked money he had been given by the informer two days previously. The jury found the defendants guilty only on the second count, which related to the later sale. Seemingly the discovery of the marked money in Cohen's hands afforded the jury the convincing proof of defendants' connection with the second sale which it appears to have found lacking as to the first. William Cohen was sentenced to five years' imprisonment, Katherine to three years, and each was given a fine of $1, which was remitted.

On this appeal defendants were represented by counsel assigned by the court, being other counsel than the attorney who tried the case below. We are indeed grateful for the diligent and faithful fulfillment of this task at the court's behest and for the able argument presented on behalf of the accused. Counsel has urged six grounds for reversal of the conviction, viz: (1) The evidence was insufficient to sup-

port the verdict of guilty on the second count; (2) the court abused its discretion in failing to compel production by the prosecution of information upon which a motion to compel disclosure to the court of the proceedings before the grand jury could be based; (3) the prosecuting attorney was guilty of misconduct in suggesting by a question he asked in cross-examination of Katherine Cohen that William Cohen had been convicted of crime; (4) cross-examination of Katherine Cohen as to prior convictions of crime was improper; (5) the trial court abused its discretion in sentencing William Cohen; and (6) statements of the prosecutor in his summation were so prejudicial as to require the declaration of a mistrial. Of these the last alone seems to us to require extensive discussion; the first five may be disposed of shortly.

With regard to point one, the evidence of defendants' guilt seems to us, as it did to the trial judge, clear; we certainly cannot say that the jury could not reasonably have found them guilty on the second count. As to point two, although counsel several times mentioned that he was planning to ask the court to examine the testimony before the grand jury, he never made a direct request to the court for such action. Hence there could be no erroneous refusal by the court. In any event we could hardly say that the court's refusal to order the production of the minutes was an abuse of the wide discretion vested in trial judges as to this matter. Thus there was no reference of any sort to any of the various matters referred to in United States v. Alper, 2 Cir., 156 F.2d 222, 226—the length of the record, the time necessary to have it transcribed, the possible delay in the trial, the "intolerable burden" of examining a lengthy transcript in an endeavor to discover inconsistencies for the defendants' benefit, the possibility that the judge might become an "active assistant of the defense," and so on.

Point three is without support in the record; it requires involved premises and distorted conclusions to discover in the question complained of any more than an attempt at identification of names used by the defendants, much less a suggestion or implication that the codefendant had been convicted of crime. As to point four, we find no error in the cross-examination of Katherine Cohen as to prior convictions of crimes, including misdemeanors. In United States v. Minkoff, 2 Cir., 137 F.2d 402, we followed the New York rule permitting such examination; and while the adoption of Rule 26 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., may give the United States courts some mandate to re-examine their rules of evidence, we are not convinced of the desirability of a change in this rule or repudiation of our former decision. Finally the sentence imposed on William Cohen was within the statutory limits; we will not tamper with the trial court's discretion in its imposition of sentence based upon its low estimate of the culprit.

We turn, therefore, to defendants' contention that statements of the prosecutor in his summation were so prejudicial as to require a new trial. This objection is based particularly upon the following statement by the prosecutor: "All we know from the evidence in this case, and we are restricted to the evidence in this case, is that this man Cohen was found stalking around the street at night, or at 4 o'clock in the morning, with a known prostitute, and part of the money that was given to her was found upon him, and in the law a man who lives on the proceeds of prostitution is not a painter but is, as the evidence indicates in this case, a pimp." This was immediately followed by defendants' motion for a mistrial "on the ground of that informal remark made by counsel, adverting to no testimony, no evidence in the record, referring to the commission of another crime with which he is not charged." The court, however, denied the motion, saying, "I think this is fair comment."

It is this passage which must be relied on to justify a new trial if one is to be granted. True, objection is made to this later statement: "Another thing you might consider. Why do these people give the address of 440 West 40th Street, when they did not live there? What were they concealing at their home? Was it because

Cohen probably, as Katherine Cohen, Katherine Roberts, and so on down the list, has piling up his seven or eight hundred dollar bank roll that he totes around the City of New York without any legitimate occupation?" This also led to counsel's objection "to that kind of statement, charging the defendant with commission of the crime of compulsory prostitution," which was passed by the court without comment. But this statement seems to us harmless, and in any event based upon uncontradicted evidence and suggesting inferences which the jury might well have drawn from the evidence.

The earlier charge that William Cohen was a "pimp" is of course more serious. That the remark was undignified for a representative of the United States Government, and in questionable taste, may be conceded. But whether it was so prejudicial as to deprive the defendant of a fair trial must be decided according to the laws of evidence rather than the laws of etiquette.

█ If the record afforded no justification for the prosecutor's charge, we might be compelled to order a new trial, Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314, although even then the Supreme Court has indicated that a new trial may be unnecessary where the case was strong, the evidence of guilt overwhelming, and the misconduct of the prosecuting attorney slight or confined to a single instance. But here we think the evidence gave sufficient support to the inference drawn by the prosecutor, which he expressly limited to the evidence before the jury, that reversible error is not shown. Malone v. United States, 7 Cir., 94 F.2d 281, certiorari denied 304 U.S. 562, 58 S.Ct. 944, 82 L.Ed. 1529.

In this connection we need to have in mind the circumstances under which the statement was made, as well as its exact content. It was made to answer a definite argument of the defense summation. In fact, the whole summation by the prosecutor, whether wisely or not, was cast in terms of answering the defense arguments. The prosecutor had already told the court that he did not expect to take more than five minutes for his argument; and he began by saying that he would try to keep within this time, "but there are a few fundamental points." With this he proceeded to recite specifically the contentions of his opponent and to answer them. The jury could not have failed to grasp this negative and defensive nature of his brief statements. The particular reference was his final statement ridiculing a defense claim that the extensive money found on defendant William may have come from his business earnings, Katherine having testified shortly that he was "a painter." The prosecutor had just argued that they had had no opportunity to disprove this, but that the defense counsel was a very able and experienced attorney who would have produced the boss painter with his records to have proved these as legitimate earnings, had that been the fact. Then followed the matter objected to, which, as we see, consisted of four statements of facts and inferences. Before we note these more particularly, we should observe the caution at the beginning, "All we know from the evidence in this case, *and we are restricted to the evidence in this case,*" with the like caution at the end, "in the law a man who lives on the proceeds of prostitution is not a painter but is, *as the evidence indicates in this case,* a pimp." (Italics supplied.) This was certainly explicit warning to the jury that only the evidence as recollected controlled and that this was the prosecutor's inference from the evidence.

The prosecutor's four statements were that William Cohen was found "stalking around the street" at night, that his companion was a known prostitute, that part of the money given Katherine by the government informer was found on William, and hence that the evidence indicated that William was living on the proceeds of prostitution. The statements of fact were either quite true—thus Katherine, indubitably William's companion, was certainly a known prostitute, with eight convictions on this charge, by her own admissions—or else involved inaccuracies in the prosecutor's recollection of the evidence which did not change the picture. Thus at the time of his arrest he was actually in a restaurant;

but on the two earlier occasions described by the government agents, he had been at least walking, if not "stalking," around the streets, once about 3:45 a. m., once around midnight. So the marked money found on William was that given by the informer Bell in the second transaction. According to the testimony of both agents, Bell had handed the money directly to William, reversing the procedure used in the earlier instance where the marked money, which was never found, was given to Katherine. Thus the prosecutor was wrong as to this instance, though the conclusion was not unfair as to the general conduct of the pair.

Beyond these details, the general inference that the $755 found on William at the time of his arrest came from Katherine is reasonable on the basis of the evidence. The explanation for the funds given by Katherine on the stand was fantastically unconvincing. It was her claim that she and William had withdrawn the money from a Christmas Club account with the Girard Trust Company in Philadelphia in late December or early January. She said that they normally celebrated at the time of the Turkish Christmas, January 14, but that in this year they were late and were still carrying the money with them on March 25 for the purchase of Christmas presents. This improbable tale was demolished by the showing from the Trust Company that no withdrawal had been made at the time mentioned which could possibly have been the money which the Cohens claimed to have withdrawn, and further that neither of the Cohens had an account there at the time. The funds involved must have come from somewhere. The claim that these were his earnings as painter deserved the prosecutor's treatment of it. That, being demolished, left William without visible means of support. On this record the prosecutor's inference that the money found on William was his wife's earnings from her sordid profession was not beyond the bounds of reason. There is perhaps technically a further step to the conclusion that he was a pander or procurer, though in Lander v. Wald, 218 App.Div. 514, 219 N.Y.S. 57, affirmed 245 N.Y. 590, 157 N.E. 870, the word "pimp" is held broad

enough to include the knowing receipt of money for pandering. But the difference practically and legally is certainly small; and in any event, the prosecutor was showing his meaning of the term by stating his premises. That he used the shorter and perhaps more vulgar expression did not carry him beyond the dictionaries of Messrs. Black or Webster, or the cases, e. g., Powell v. State, 108 Miss. 497, 66 So. 979.

In general it is within the discretion of the trial court to determine whether or not invective based on the evidence and inferences flowing therefrom exceed the limits of professional propriety. An appellate court will review the exercise of that discretion only where the invective is so palpably improper as to have been clearly prejudicial. Johnston v. United States, 9 Cir., 154 F. 445, 449. Here defense counsel, although given the widest latitude in making requests to charge and taking exception to the charge, made no request of the court to instruct the jury to disregard the allegedly damaging remarks. A request for an instruction, rather than the extreme remedy of a declaration of mistrial, would surely have been more appropriate. Compare Diggs v. United States, 9 Cir., 220 F. 545, 556, affirmed 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas. 1917B, 1168.

In La Feber v. United States, 8 Cir., 59 F.2d 588, 590, a remark by the prosecutor in his summation that defendant, being tried for a violation of the Mann Act, 18 U.S. C.A. §§ 2421–2424, was "pandering" was held not reversible error. The court noted that the statement was supported by the evidence and the reasonable inferences therefrom, and said that, while the statement of the District Attorney was not to be commended, it was made in the heat of his closing argument, and under the circumstances "was not calculated to arouse prejudices in the minds of the jury inconsistent with the administration of justice." So in Di Carlo v. United States, 2 Cir., 6 F.2d 364, 368, this court, speaking through L. Hand, J., refused "to confine a prosecuting attorney to an impartial statement of the evidence," and went on to say: "He is an

advocate, and it is entirely proper for him as earnestly as he can to persuade the jury of the truth of his side, of which he ought to be thoroughly convinced before he begins at all. To shear him of all oratorical emphasis, while leaving wide latitude to the defense, is to load the scales of justice; it is to deny what has always been an accepted incident of jury trials, except in those jurisdictions where any serious execution of the criminal law has yielded to a ghostly phantom of the innocent man falsely convicted." See also United States v. Antonelli Fireworks Co., 2 Cir., 155 F.2d 631, 636–638, certiorari denied 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640.

Judgment affirmed.

L. HAND, Chief Judge (dissenting).

If the only question were whether William Cohen was in fact guilty, I should have no doubt that the conviction should stand, but that is not the only question; we must also be satisfied that the jury was not influenced by what the prosecutor said, and personally I do not see how we can be sure. They acquitted both Katherine and William Cohen on the first count, presumably because none of the marked money was found upon Katherine; and if so, that meant that they were not convinced by the testimony of the officers that they saw any money pass to her. Of course it is true that if the money was in fact found on William, his guilt was established beyond doubt, but the only evidence that it was so found was the officers' testimony, and how can one know that the summation may not have influenced the jury to accept it? When I remember the solicitude with which all irrelevant evidence is excluded which can divert the jury from the issues to which they should confine themselves, I am unwilling to overlook this loathsome charge, not only made without adequate support in the evidence; but, so far as it was supported at all, supported by the misuse of Katherine's convictions. When she took the stand, she admitted that she had been again and again convicted of prostitution, and of other crimes; but such evidence has never been admitted except to discredit the witness (little as we may believe that its effect will be, or can be, so limited). A prosecutor may not use it as evidence of another crime; yet this prosecutor said literally not a word about William's connection with the sales in question, and devoted all of his short address to the charge that William had exploited Katherine as a harlot, and that the money found on him was the result of her earnings.

The excuse is that it was a proper answer to the defence's argument that William had earned the money as a painter. I agree that that was absurd, and that it was proper to expose it unsparingly; moreover, I agree that if evidence relevant to the crime for which the accused is on trial discloses another crime, the accused must abide its use; he cannot have immunity for one crime because he has committed another. But in the case at bar not only was it by diverting the evidence of Katherine's convictions from their proper use that the charge got even such support as it had, but in addition that support appears to me altogether insufficient. It showed nothing more than that Katherine had been long a prostitute and that William had a large sum of money, for whose source Katherine could give no rational explanation. Nobody can of course be sure that the money was not her earnings, although her last conviction for that offense was in December, 1945, more than a year before the money was found on William; but I cannot imagine that anyone would maintain that this evidence would have supported a conviction of William as a procurer. Both were shown to be engaged in dispensing heroin, an occupation which may well have netted them as large a sum of money. Katherine was an utterly abandoned woman, convicted of larceny as well as prostitution; what they did not make in selling heroin, they may have stolen.

But, even if there had been evidence to support the charge, it was completely irrelevant to that for which William was on trial, and which alone he was advised that he must meet. That might not have been enough, I think, to upset conviction, had it been only an incident in the summation; and if the judge had corrected it. But it was not an incident; as I have said, it

was all that the prosecutor presented to the jury in support of the crime of selling heroin, with which it had nothing whatever to do. Moreover, far from correcting it, the judge gave it his approval. On the other hand, the fact that my brothers think that the whole matter is not of enough importance to call for a reversal, troubles me, for I am quite aware of the danger that upon criminal appeals we may catch at shadows, and shrink from phantoms. Little in the end will do more to discredit criminal procedure than such a disposition, which has by no means disappeared. Moreover, like most legal questions, this is a matter of more or less, and it is usually better to accept the conclusions of one's fellows. Nevertheless, in spite of these compunctions, I cannot believe that we are faced with only a lapse in taste; William was presented to the jury as among the most debased of human creatures, upon an utterly foreign issue, and without any adequate warrant in the evidence. I cannot agree that this was less than a grave invasion of his right to a fair trial.