VICTOR MARRERO, United States District Judge.
Defendant Lloyd Kidd ("Kidd") is accused of four counts of commercial sex act exploitation and one count of producing child pornography. (See "Second Superseding Indictment," Dkt. No. 53.) Kidd's trial on these charges is scheduled to begin before the Court on July 8, 2019. In connection with the upcoming trial, Kidd filed motions in limine seeking to preclude (1) the expert testimony of Dr. Chitra Raghavan ("Raghavan") describing the "psychological relationship between a pimp and the women prostituted" (id. at 2 (internal quotation marks omitted)); and (2) the Government from referring to Kidd *261 as a "pimp" during trial. (See "Kidd Motion," Dkt. No. 36.)[1]
Kidd offers four arguments in support of precluding the expert testimony. First, he protests that the notice the Government provided about the content of Raghavan's testimony was substantively inadequate. Second, Kidd contends that Raghavan's testimony fails to meet the standard of reliability required under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Third, Kidd argues that Raghavan's testimony "is not probative of whether Mr. Kidd engaged in the sex trafficking offenses he is charged with." (Id. at 4.) Fourth, Kidd claims that Raghavan's proposed testimony is highly prejudicial, such that even if it was probative, the adverse effect would not outweigh the risk of prejudice under Rule 403 of the Federal Rules of Evidence ("Rule 403").
The day after the Kidd Motion was filed, the Government notified Kidd that, due to a scheduling conflict, Dr. Sharon Cooper ("Cooper") would testify in place of Raghavan, but on the same topics. (See "June 19 Letter," Dkt. No. 41.) Kidd raises similar concerns with Cooper's proposed testimony as he does with Raghavan's, as well as objections about alleged lack of timely notice. Kidd also notes that at least one federal Court excluded Cooper's testimony in a sex trafficking case. (See id. at 1 n.1 (citing United States v. D'Ambrosio, No. 15 CR. 003, 2016 WL 1385281 (M.D. Pa. Apr. 7, 2016), aff'd, 677 F. App'x 84 (3d Cir. 2017) ).)
The Government opposes both motions. (See "Opposition," Dkt. No. 48.) First, the Government counters that it provided adequate notice regarding the expert witness. The Government notes that it provided Kidd with notice of Raghavan's testimony one month before trial, and the recent substitution for Cooper to testify about identical topics does not prejudice Kidd. On the adequacy of the substance of the notice, the Government explains that in addition to the summaries it provided describing Cooper's testimony, the Government directed Kidd to specific cases in which Cooper had previously testified.
Second, the Government counters Kidd's Daubert challenge by pointing out that Cooper has previously testified regarding the issues at the trial of this case and similar topics in criminal trials hundreds of times, including in over a dozen federal cases. The Government argues that the Daubert standard does not require the kind of scientific methodology Kidd seeks because experts like Cooper may testify based on experience and training.
Third, the Government provides several reasons why Cooper's testimony is probative. For example, the Government contends that the average juror is unaware of the recruitment tactics pimps employ and what factors, such as a difficult childhood, might induce an individual to fall for such tactics. Similarly, the Government contends that the average juror may need background to explain why, once recruited, a victim remains in the pimp-prostitute relationship.
Fourth, the Government disagrees with Kidd that Cooper's expert testimony would be more prejudicial than probative under Rule 403.
Finally, regarding Kidd's motion to preclude any references to "pimp," the Government argues that the term is not unfairly prejudicial and is a necessary, *262 commonly understood term which "facilitates a description of the offense conduct." (Opposition at 13.)
For the following reasons, the Kidd Motion is DENIED in its entirety.
I. DISCUSSION
A. TESTIMONY OF COOPER [2]
1. Adequate Notice
Federal Rule of Criminal Procedure 16(a)(1)(G) provides that, at the defendant's request, "the government must give to the defendant a written summary of any [expert] testimony that the government intends to use ... during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). Such a summary cannot "merely [list] general" or "extremely broad topics." United States v. Ulbricht, 858 F.3d 71, 115 (2d Cir. 2017). Rather, the notice must provide sufficient detail such that the basis for any testimony or opinion can be identified. (See id. )
Here, Kidd is equipped with everything he needs to prepare for Cooper's testimony. Specifically, as the Government points out, Cooper has testified on these precise topics innumerable times before. Her testimony is not case-specific, and, as the Government indicates, is unlikely to vary much case-to-case. In fact, to the extent it does vary, Kidd will surely use those deviations during cross examination. The defendants in Ulbricht, by contrast, sought to admit the testimony of experts concerning such broad topics as "the origins of Bitcoin" and "general principles of internet security and vulnerabilities," but never disclosed what the experts' opinions even were, let alone their bases. 858 F.3d at 91, 115 (alterations omitted). In light of Cooper's previous testimony, which the Government has indicated will be similar to her testimony here, the Court finds the expert notice the Government provided Kidd substantively adequate.
The Court now turns to the timeliness of the notice. The Government contends that typically such an expert notice is provided a month before trial. (See Opposition at 5.) Kidd implicitly agrees with that proposition, as he did not object to the notice of Raghavan's testimony on timeliness grounds and later conceded that notice was timely. (See June 19 Letter at 2.) The only question, then, is whether the change of expert (but not the topics of testimony) and resulting new notice provided nearly three weeks before trial was untimely.
The Court is persuaded that the notice was timely. First, the Court notes that at the status conference held on May 3, 2019, Kidd demanded a trial as soon as possible. On that occasion the Court scheduled the July 8, 2019 trial start date. (See Dkt. Minute Entry for 5/3/2019). Thus, some of the timeliness issues resulting from the expedited procedure in this case may be attributable to Kidd's own demand.
Second, in the June 19 Letter, Kidd maintains that Cooper's testimony was largely objectionable on the same grounds as Raghavan's. In that sense, Kidd concedes that he is not prejudiced by the substitution. But even if he had not had time to review Cooper's proposed testimony before the June 19 Letter, he had the opportunity to raise any additional concerns before the June 27, 2019 deadline to file reply briefing in this matter. Kidd never did so. Thus, the Court is further persuaded that the notice of the substitution *263 of Raghavan's testimony did not prejudice Kidd's preparation for trial.
In short, "the proposed testimony [is] not a surprise to" Kidd. See United States v. Rosario, No. 09 CR. 415, 2014 WL 6076364, at *4 (S.D.N.Y. Nov. 14, 2014). Accordingly, the Court finds that Cooper's proposed testimony should not be precluded on timeliness grounds.
2. Daubert Challenge
At the first step of the Daubert inquiry, courts are instructed to consider the expert's qualifications. Pursuant to Rule 702 of the Federal Rules of Evidence :
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702. Next, a trial court must decide whether a qualified expert's testimony rests on a reliable foundation or is simply based on "subjective believe or unsupported speculation." Daubert, 509 U.S. at 590, 113 S.Ct. 2786.
In Daubert, the Supreme Court set out a list of nonexhaustive considerations that a trial court may take into account in determining whether an expert's reasoning or methodology is reliable: (1) whether the theory or technique upon which the expert relies has been tested - that is, whether the expert's technique can be challenged in some objective sense, or whether it is simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or method has been generally accepted by the expert community. See Daubert, 509 U.S. at 593-94, 113 S.Ct. 2786. The test of reliability, however, is a "flexible" one, and the considerations set forth in Daubert do not constitute a definitive checklist or test. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).
When applying this test, the "trial judge [has] considerable leeway" in determining whether to admit or exclude the proposed expert testimony. Id. at 152, 119 S.Ct. 1167. However, the Court's determination should be made in accordance with "the liberal admissibility standards of the federal rules and recognize[ ] that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).
Kidd argues that because there are no "studies or empirical data" in Cooper's proposed testimony, "[t]here are no objective standards" available to assess it. (Kidd Motion at 4.) For example, Kidd questions whether proposed testimony about "trauma bonding" can be assessed for reliability. (Id. )
Despite the prevalence of such expert testimony regarding the psychology of the pimp-prostitute relationship, Kidd cites no case where such testimony was disallowed on Daubert grounds. Indeed, case law quite commonly upholds this type of testimony against Daubert challenges. See, e.g., *264 United States v. Kelly, No. 07 CR. 374, 2008 WL 5068820, at *9 (E.D.N.Y. July 10, 2008) ("The courts have deemed prostitution rings and the relationships between prostitutes and pimps to be subjects in which expert testimony may be relevant."). Facing arguments similar to those the Court addresses here, one court rejected a Daubert challenge to Cooper's testimony, noting that "no considerable debate exists within the literature as to the destructiveness or control aspects of a pimp-prostitute relationship." United States v. King, 703 F. Supp. 2d 1063, 1072 (D. Haw. 2010) (rejecting a Daubert challenge to Cooper's testimony premised on the argument that Cooper implemented no "accepted psychiatric or psychological test ... to arrive at her ... opinions about how [pimps] create and maintain a sex trafficking organization").
Cooper's expertise, training, and background indicate why successful challenges to her testimony are not more prevalent. She has testified in numerous cases about the very topics she will address in this trial, written textbooks and articles about them, professionally treated several former prostitutes and spoken to numerous others. Indeed, Kidd does not challenge Cooper's qualifications,[3] only the reliability of her methods. However, in her field, "[s]ocial science research, theories and opinions cannot have the exactness of hard science methodologies and expert testimony need not be based on statistical analysis in order to be probative." United States v. Joseph, 542 F.3d 13, 21 (2d Cir. 2008).
For all these reasons, the Court is persuaded that Cooper's testimony meets the standard for reliability set forth in Daubert. Therefore, the Court will not hold a Daubert hearing or preclude Cooper's testimony on Daubert grounds.
3. Federal Rules of Evidence 401 and 403
Kidd argues that Cooper's proposed testimony is both irrelevant and prejudicial. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. But relevant evidence may be excluded "if its probative value is substantially outweighed by," among other factors, "unfair prejudice[.]" Fed. R. Evid. 403.
Although Kidd objects on both relevancy and prejudice grounds, his arguments regarding prejudice are predicated upon relevancy. (See, e.g., Opposition at 5 (arguing that because there are no allegations regarding the minor victims' troubled childhood, Cooper's testimony on that subject is prejudicial.) As such, the Court addresses Kidd's arguments largely on relevancy grounds.
Kidd chiefly points the Court to the decision in D'Ambrosio. As Kidd notes, that court found Cooper's testimony inadmissible in the Government's case-in-chief because it would constitute improper bolstering of the victims' testimony. However, although the defendants in that case were, like Kidd, charged under 18 U.S.C. Section 1591(a), because of the Government's charging decisions, it had to prove offense elements different from those at issue in this case. Specifically, the elements at issue in D'Ambrosio focused on whether "[d]efendants themselves transported minors in interstate commerce for the purpose of a commercial sex act." 2016 WL 1385281, at *2.
*265 The difference in elements between the two cases requires differing treatment of Cooper's testimony. Here, in the case at chief, the Government must prove trafficking through force, threats of force, coercion, or a combination of such means. As stated in the letter summarizing her testimony, Cooper will testify about how "pimps use force and coercion to maintain control over adolescent female and adult prostitutes." (Opposition Ex. A at 1-2.) Similarly, regarding the alleged minor victims, Cooper's expected testimony on experiences that may make a victim more susceptible to recruitment will be important background for the jurors. Kidd counters (in what he labelled as his prejudice argument) that there are no allegations that the victims here had the kind of experiences that may have placed them at a higher risk of being exploited. If such a factual predicate remains lacking at trial, Kidd may raise the objection to that aspect of Cooper's testimony on relevance and prejudice grounds at that time.
In sum, the Court is persuaded that Cooper's testimony is relevant and the probative value of Cooper's testimony outweighs its potential prejudice, presuming that the victims testify as indicated by the Government about their relevant life experiences and relationships with Kidd.
B. REFERENCES TO KIDD AS A "PIMP"
Kidd argues that the Government should be precluded from referring to him as a "pimp" during trial, because that term connotates that he "is already guilty of promoting prostitution." (Kidd Motion at 6-7.) Kidd cites no case law or precedent in support of his argument.
Courts have generally permitted references to defendants as "pimps" in the past. See, e.g., United States v. Lowenberg, 853 F.2d 295 (5th Cir. 1988) ; United States v. Cohen, 177 F.2d 523 (2d Cir. 1949). Those courts reason that as long as the evidence supports them, and there is a cautionary instruction regarding the prosecution's characterizations, terms like "pimp" merely "reinforce the prosecution's interpretation" of the evidence. Lowenberg, 853 F.2d at 302. More recently, another court in this district has permitted references to the term "pimp" as a useful plain language shorthand. (See Trial Tr. at 6-7, United States v. Benjamin, 18 CR. 874 (S.D.N.Y. May 8, 2019).)
The Court is not persuaded that the Government's referring to Kidd as a pimp will prejudice him. While the Court will remain alert to prevent gratuitous usage of "pimp" and similar potentially loaded terms, the Court will not preclude all references to Kidd as a "pimp."
II. ORDER
For the reasons stated above, it is hereby
ORDERED that the motions in limine of defendant Lloyd Kidd (Dkt. No. 36) are DENIED .
SO ORDERED .

Kidd also sought to preclude the testimony of investigator Sean Ryan ("Ryan"). The Government has indicated that it no longer intends to call Ryan and thus the Court will not consider those arguments.

Because Kidd characterizes Cooper's testimony as "generally objectional for the same reasons" as Raghavan's (June 19 Letter at 2), the Court addresses Kidd's arguments in the Kidd Motion as if they were made as to Cooper.

Further, numerous courts have consistently found Cooper qualified to testify in the topics of her expertise. See, e.g., United States v. Shamsud-Din, No. 10 CR 927, 2012 WL 280702, at *5 (N.D. Ill. Jan. 31, 2012).